Paul A. Rachmuth  　　　　　　　　　　　　　　　　Hearing Date: November 18, 2016
Attorney at Law  　　　　　　　　　　　　　　　　　　　　　　　　　　10:00 am
265 Sunrise Highway, Ste. 62
Rockville Centre, New York  11570
Telephone: (516) 330-0170
Facsimile: (516) 544-0516
paul@paresq.com

Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>　　　　EDWARD J. BRONSON,<br><br>　　　　　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 16-23498-rdd |

**REPLY AFFIRMATION IN SUPPORT OF AN ORDER (A) ENFORCING THE AUTOMATIC STAY OF 11 U.S.C. §362(a), AND (B) AWARDING DAMAGES FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(k)(1)**

　　　　PAUL A. RACHMUTH, an attorney admitted to practice before this Court affirms the truth of the following, fully cognizant of the penalties of perjury:

　　　　1.　　I am counsel to Edward J. Bronson, the debtor herein (the "Debtor") and am familiar with the facts and circumstances stated herein.  The information contained herein is true to the best of my knowledge, after due inquiry.

　　　　2.　　I make this affirmation in further support of the application for an Order (a) Enforcing the Automatic Stay of Section §362(a) of 11 U.S.C. §101 *et eq.* (the "Bankruptcy Code"), and (b) Awarding Damages for Willful Violations of the Automatic Stay Pursuant to

§362(k)(1) of the Bankruptcy Code (the "Application")[1] and in reply to the Declaration of Maranda Fritz in Opposition to the Application filed on behalf of Grober and Solomon (the "Fritz Dec.").

3. The Fritz Dec. does little more than demonstrate that it was and is the intention of Grober and Solomon to violate the Bankruptcy Code's automatic stay and that they employed improper means to do so.

4. Throughout the Fritz Dec., Grober and Solomon assert that they believe assets in Dawn Bronson's name and the name of V2IP have been transferred to them by the Debtor. There are three errors with these assertions. First, despite their use of improperly obtained documents, they show no transfers from the Debtor or any of the defendants in their litigation to either Dawn Bronson or her company, V2IP. Second, they never commenced an action against Dawn Bronson or V2IP, which would have given them a chance to refute the accusations. And, third, even if Grober and Solomon are correct, they merely prove that they have interfered with the debtor's assets after being notified of the bankruptcy case.

A. GROBER AND SOLOMON SHOW NO EVIDENCE THAT ASSETS HELD IN V2IP'S ACCOUNTS BELONG TO THE DEBTOR

5. The Fritz Dec. is replete with false accusations from former business associates and unjustified leaps of faith; none of which demonstrate that V2IP is owned by the Debtor.

6. The Fritz Dec. starts by relaying the musings of Grober that as far as he knows, which knowledge is based on a few conversations years ago, that Dawn Bronson could not possibly run a business. His inference, therefore, is that the Debtor must be running the business. This

---

[1] Capitalized terms not herein defined shall have the meaning ascribed to them in the Application.

pejorative conclusion is false. And even if it were true, it proves nothing. Even if Dawn Bronson received help in buying and selling stocks, it does not mean that the company or its assets are not hers. Just to emphasize the point, the Fritz Dec. makes a point that Adam Didia, someone who works with the Debtor, also has trading authority in the V2IP account. By their logic, then, Mr. Didia would own V2IP too.

7. In fact, the Fritz Dec. attaches hundreds of pages of bank records and asserts that they prove that the Debtor owns V2IP. Yet, they do not cite to a single document showing funds going from the Debtor to V2IP. Instead, the documents merely show regular business transactions of several of the Debtor's businesses – with money coming in and going out from the purchase and sale of securities. As an example, the Fritz Dec. references a sale of shares to Beaufort Capital. This was a normal course of business of both the Debtor's company as well as Grober and Solomon. And, in fact, the bank records included in Fritz Dec. G show that a portion of the funds received went to pay Grober and Solomon as part of the settlement agreement.

8. The documents also show legitimate business entities, which are not debtors of Grober and Solomon, conducting business. These include the offshore entity formed years before Grober and Solomon obtained their default judgment against the Debtor. Finally, the documents show separate, unrelated transactions of V2IP, with funds flowing in and out of its accounts – not going to or coming from the Debtor.

9. Again, even if the Debtor's business entities did conduct business with V2IP – which these documents do not show - it would not show that the Debtor owns V2IP.

10. Rather, as demonstrated in the Affidavit of Dawn Bronson in Further Support of the Application (the "<u>Dawn Bronson Aff, in Further Support</u>") at Exhibit B, all assets in V2IP's

trading and bank accounts were generated by V2IP and its trading activity. No funds or assets were transferred either directly or indirectly by the Debtor or any of the defendants in Grober and Solomon's litigation.

11. As an example of the false statement in the Fritz Dec, it asserts that the Debtor is a "bad actor". (Fritz Dec. ¶15.) This statement is knowingly wrong. The term "bad actor" is a term of art referring to SEC Reg. D, Sect. 506(d). Reg. D, Sect. 506 provides an exemption to registration for certain transactions, but it may not be used by "bad actors", which are defined as an issuer or parties related to an issuer who have been convicted of committing certain securities related crimes or other nefarious actions. See, SEC Reg. D, Rule 501(d)(1)(i)-(viii).

12. The Debtor has never been found to have committed any act that would deem him a "bad actor". Rather, he is currently defending himself against a complaint filed by the SEC regarding an allegedly improper application of a registration exemption relating to whether his business was properly located in Delaware. Even if found to have violated the exemption, he would not be considered a "bad actor", he would simply be fined. Grober and Solomon participated in the same acts, but they made a deal with the SEC in exchange for providing testimony against the Debtor and then sued the Debtor on the same transaction. Grober's two business partners, however, have been found to be "bad actors". Alan D. Goddard and Michael Lichtenstein, Grober's partners in LGGH Group, LLC, have been barred from the securities industry and deemed "bad actors" for their participation in a $72 million Ponzi scheme. (See, United States Securities and Exchange Commission v. McKnight, et al., E.D. Mich., 08-11887.)

13. Another knowingly false statement in the Fritz Dec. is the assertion that Macallan Partners held $1 million in assets (Fritz Dec. ¶21). The assets referred to are corporate securities

with no trading value. The same assets were offered to Grober and Solomon as part of a settlement (which is how they learned of their existence). However, Grober and Solomon rejected the assets as being worthless.

### B. NO ACTION AGAINST V2IP DAWN BRONSON OR ANY OTHER COMPANY

14. The start and end of the conversation should be whether V2IP is owned by the Debtor. As V2IP's articles of incorporation show, it is owed by Dawn Bronson (see Aff. of Dawn Bronson in Further Support, Exhibit A).

15. If Grober and Solomon believe V2IP is really the property of Debtor but is being held by Dawn Bronson, there is a proper legal path to take; in state court, they could have commenced an action against Dawn Bronson seeking a turnover of the asset or to enforce a constructive trust. And, in the bankruptcy court, they could have sought permission to commence an action under Bankruptcy Code Section 542. They did not commence either of these litigations. Instead, they have insisted that because they have claims against the Debtor and because assets of the Debtor's wife must belong to him, they may restrain those assets. Their procedure is wrong and their conclusion is wrong.

### C. GROBER AND SOLOMON HAVE MERELY PROVED THAT THEY VIOLATED THE AUTOMATIC STAY

16. Grober and Solomon contend that V2IP is property of the Debtor. They also admit that they have notified Alpine, V2IP's securities trading account holder, that it may not allow V2IP to conduct its business. Thus, if Grober and Solomon are correct, their actions are the very definition of willful stay violations.

17. They have sought to enforce the pre-bankruptcy state court temporary restraining order against estate Assets. In doing so, Grober and Solomon have injured V2IP by preventing it from conducting business.

## CONCLUSION

18. For the foregoing reasons, the Debtor respectfully requests this Court issue an Order granting the Application and such other and further relief as it deems just and proper.

Dated: November 17, 2016
      Rockville Centre, New York

                                              <u>/s/ Paul A. Rachmuth</u>
                                              PAUL A. RACHMUTH (PR1566)
                                              Attorney at Law
                                              265 Sunrise Highway, Ste. 62
                                              Rockville Centre, New York 11570
                                              Telephone: (516) 330-0170
                                              Facsimile: (516) 543-0516
                                              Paul@PAresq.com